Gibson v. Craigslist, Inc. Doc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALVIN GIBSON,

       Plaintiff,

   v.

CRAIGSLIST, INC.

       Defendant.

08 CV 7735 (RMB)

*Document Electronically Filed*

MEMORANDUM OF LAW IN SUPPORT OF CRAIGSLIST, INC.'S MOTION TO DISMISS

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

**Preliminary Statement** ............................................................................................................ 1

**BACKGROUND** ...................................................................................................................... 2

    A.    The Complaint's General Allegations ........................................................................ 2

    B.    The Complaint's Claims Against craigslist ................................................................ 2

**LEGAL ARGUMENT** ............................................................................................................ 3

**POINT I. MOTION TO DISMISS STANDARD** ................................................................... 3

**POINT II. THE COMMUNICATIONS DECENCY ACT BARS CLAIMS AGAINST INTERACTIVE COMPUTER SERVICE PROVIDERS FOR CONTENT POSTED BY THIRD PARTIES** ...................................................................................................................... 4

    A.    The Relevant Language of the CDA .......................................................................... 4

    B.    Congressional Policy Behind the CDA ...................................................................... 5

    C.    Judicial Interpretation of the CDA ............................................................................. 7

**POINT III. THE COMMUNICATIONS DECENCY ACT, SECTION 230, BARS THE CLAIMS IN THE COMPLAINT AGAINST CRAIGSLIST** ................................................... 9

    A.    Craigslist is a "Provider or User of Interactive Computer Services." ........................ 9

    B.    The Alleged Advertisement Was "Provided By Another Information Content Provider." ................................................................................................................... 10

    C.    The Complaint Seeks to Treat Craigslist as the "Publisher or Speaker" of the Alleged Advertisement ............................................................................................. 11

**CONCLUSION** ....................................................................................................................... 14

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Ben Ezra, Weinstein, & Co. v. America Online, Inc.,
    206 F.3d 980 (10th Cir. 2000) ..................................................................................8, 9

Blumenthal v. Drudge,
    992 F. Supp. 44 (D.D.C. 1998) ...............................................................................7, 10

Carafano v. Metrosplash.com, Inc.,
    339 F.3d 1119 (9th Cir. 2003) ..................................................................................8, 9

Chi. Lawyers' Committee for Civ. Rights Under Law, Inc. v. Craigslist, Inc.,
    461 F. Supp. 2d 681 (N.D. Ill. 2006), *aff'd*, 519 F.3d 666 (7th Cir. 2008) ................................9

Corbis Corp. v. Amazon.com,
    351 F. Supp. 2d 1090 (W.D. Wash. 2004)....................................................................11

Doe v. City of New York,
    2008 U.S. Dist. LEXIS 33488 (S.D.N.Y. 2008).............................................................7

Doe v. MySpace, Inc.,
    474 F. Supp. 2d 843 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) ..............11, 12, 13

Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC,
    521 F.3d 1157 (9th Cir. 2008) ........................................................................................7

Geisler v. Petrocelli,
    616 F.2d 636 (2d Cir. 1980)............................................................................................3

Green v. America Online, Inc.,
    318 F.3d 465 (3d Cir. 2003)............................................................................................8

Gucci America, Inc. v. Hall & Associate,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001)...........................................................................12

Murawski v. Pataki,
    514 F. Supp. 2d 577 (S.D.N.Y. 2007)............................................................................7

Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,
    748 F.2d 774 (2d Cir. 1984)............................................................................................3

In re Sharp International Corp.,

403 F.3d 43 (2d Cir. 2005) .................................................................................................3

Universal Commc'n System Inc. v. Lycos, Inc.,
    478 F.3d 413 (1st Cir. 2007) ..........................................................................................7

Zeran v. America Online, Inc.,
    129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S. Ct. 2341, 141 L. Ed.
    2d 712 (1998) ...........................................................................................5, 6, 7, 8,
                                                                                                        9, 10, 12, 13

**STATE CASES**

Barnes v. Yahoo!, Inc., Case Number Civ. 05-926-AA,
    2005 WL 3005602 (D. Or. Nov. 8, 2005) .....................................................................9

Schneider v. Amazon.com, Inc.,
    108 Wn. App. 454, 31 P.3d 37 (Wash. App. 2001) ...................................................11

Stoner v. eBay Inc.,
    No. 305666, 2000 WL 1705637 (Cal. Super, Ct. Nov. 1, 2000) ................................12

Stratton Oakmont, Inc. v. Prodigy Servs. Co.,
    1995 N.Y. Misc. LEXIS 229, 23 Media L. Rep. (BNA) 1794 (N.Y Sup. Ct. 1995) ..................6

**FEDERAL STATUTES**

§ 230 of the Communications Decency Act, 47 U.S.C. § 230 ...................................1, 2, 3, 4, 5, 6
                                                                                                        7, 8, 9, 10, 11, 12, 13

**OTHER AUTHORITIES**

141 Cong. Rec. H8470 (Aug. 4, 1995) .............................................................................5, 6

141 Cong. Rec. H8471 (Aug. 4, 1995) ................................................................................6

H. R. Conf. Rep. No. 548, 104th Cong., 2d Sess. 194 (1996) ........................................11

H.R. Rep. No. 107-449, at 13 (2002) ..................................................................................8

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 2, 3, 13

# PRELIMINARY STATEMENT

Defendant craigslist, Inc. ("craigslist") respectfully submits this memorandum of law in support of craigslist's motion to dismiss the First Amended Complaint ("Complaint") in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Complaint's claims against craigslist are based entirely on an advertisement allegedly posted on craigslist's website by a third party.  As explained below, craigslist is protected from liability against such claims by federal law – specifically, section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Consequently, the Complaint does not assert any claim against craigslist on which relief can be granted, and it should be dismissed as a matter law under Federal Rule of Civil Procedure 12(b)(6).

craigslist has great sympathy for the situation and injuries of the plaintiff alleged by the Complaint.  craigslist condemns gun violence and the illegal purchase and sale of firearms.  Users who post advertisements on the craigslist website are required to accept terms of use that expressly prohibit advertisements for the sale of illegal goods and for the sale of weapons, including firearms.

The issue raised by this action is not the criminality of the activities that resulted in the plaintiff's alleged injuries; it is not the legality or illegality of the handgun advertisement allegedly posted on craigslist; and it is not whether the alleged handgun advertisement violated craigslist's terms of use.  The question is whether craigslist can be held liable for an advertisement posted on its website by a third party.  Federal law says it cannot.

In 1996, Congress enacted the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230"), to protect operators of interactive computer services, like craigslist, from lawsuits seeking to treat them as "publishers or speakers" of online content originated by third

parties. Since the enactment of the CDA, courts across the country, including numerous Federal Courts of Appeal, have upheld, enforced and bolstered protection for interactive computer service providers under Section 230, including against claims of negligence and other forms of tort liability.

Because the allegations of the Complaint fall squarely within Section 230 and because Section 230 bars the claims set forth in the Complaint at the outset, craigslist requests that the Court dismiss the Complaint with prejudice pursuant to 47 U.S.C. § 230 and Federal Rule 12(b)(6).

## BACKGROUND

### A. The Complaint's General Allegations

The Complaint alleges that an individual, whose identity is unknown, advertised to sell illegal handguns on craigslist's internet website, and placed "his advertisement" under a coded category on the craigslist website. (First Am. Compl. ¶¶ 14, 15). The Complaint further alleges that craigslist caused injuries incurred by the plaintiff when a third party shot him with a handgun allegedly purchased from that unknown individual's advertisement on craigslist's website. (First Am. Compl. ¶¶ 1, 18, 19).

### B. The Complaint's Claims Against craigslist

The Complaint alleges that craigslist "owed a duty of care to insure that inherently hazardous objects, such as handguns, did not come into the hands of deranged, violent individual[s]." (First Am. Compl. ¶ 17). The Complaint asserts that craigslist "breached its duty of care," because it "failed to monitor, regulate, properly maintain and police the merchandise being bought and sold on its internet website." (First Am. Compl. ¶¶ 1, 18). The Complaint further alleges that "defendant's business plan included little or no monitoring, policing,

regulating or supervision of the goods and services being bought and sold on its internet web site." (First Am. Compl. ¶ 10). Plaintiff also alleges that craigslist "is either unable or unwilling to allocate the necessary resources to monitor, police, maintain and properly supervise the goods and services sold on its internet web site," and has therefore "become a public nuisance." (First Am. Compl. ¶ 20).

These allegations, simple as they are, irrefutably establish that the Complaint must be dismissed with prejudice under Section 230.

## LEGAL ARGUMENT

### POINT I

### MOTION TO DISMISS STANDARD

In considering a motion to dismiss, a court "accept[s] all of the plaintiffs' complaint's factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiffs. Dismissal is proper if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (internal quotation marks and citations omitted). Because a Federal Rule 12(b)(6) motion determines the legal feasibility of a complaint, the court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

**POINT II**

**THE COMMUNICATIONS DECENCY ACT BARS CLAIMS AGAINST INTERACTIVE COMPUTER SERVICE PROVIDERS FOR CONTENT POSTED BY THIRD PARTIES**

Section 230 of the CDA provides an absolute bar to any cause of action that would make an interactive computer service provider, like craigslist, liable for third-party content posted on the internet through its service. The plain language of Section 230 bars such claims; the legislative history of Section 230 confirms its intent to bar such claims; and case law under Section 230 consistently enforces the broad scope of the bar.

**A.  The Relevant Language of the CDA**

Section 230(c)(1) states, in pertinent part:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
>
> [47 U.S.C. § 230 (c)(1)]

Section 230 (e)(3) adds:

> No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.
>
> [47 U.S.C. § 230 (e)(3)]

Under the CDA, "interactive computer service" includes any service or system that "provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230 (f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

It is axiomatic that the plain meaning of a statute controls its interpretation . . . ."  *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544  (2d Cir. 1999), (citing *Greenery Rehabilitation Group,*

*Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998) ("When looking at its language, a court should presume that the statute says what it means.")). Thus, "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S. Ct. 2341, 141 L. Ed. 2d 712 (1998).

B.     **Congressional Policy Behind the CDA**

Section 230 is a policy choice, enacted by Congress to serve two primary purposes. As stated by Representative Cox of California, who offered the amendment creating Section 230:

> Our amendment will do two basic things: First, it will protect computer Good Samaritans, online service providers, anyone who provides a front end to the Internet, let us say, who takes steps to screen indecency and offensive material for their customers. . . . Second, it will establish as the policy of the United States that we do not wish to have content regulations by the Federal Government of what is on the Internet, that we do not wish to have a Federal Computer Commission with an army of bureaucrats regulating the Internet because frankly the Internet has grown up to be what it is without that kind of help from the Government.

141 Cong. Rec. H8470 (Aug. 4, 1995) (statement of Rep. Cox). These purposes are reflected in Congressional policies set forth in the preamble to Section 230. Declared policies for the enactment of Section 230 include:

> to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation; . . .
>
> to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.
>
> [47 U.S.C. §§ 230(b)(1), (2), (4), (5)]

Thus, Section 230 was enacted to encourage service providers to self-regulate the

dissemination of offensive material through their services. *See* 141 Cong. Rec. H8470 (Aug. 4, 1995) (statement of Rep. Barton) (Section 230 was intended to provide online services "a reasonable way to . . . help them self regulate themselves without penalty of law"); *Zeran*, 129 F.3d at 331.[1] Moreover, Congress enacted the CDA in recognition of the growing and independent role of the internet and interactive computer services in contemporary society. *Zeran*, 129 F.3d at 330 ("Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.").

The concern prompting the enactment of Section 230, acknowledged by Congress, was that it would be impossible for service providers to systematically review and edit all third-party content and faced with potential liability for each message posted on its service, interactive computer service providers might choose instead to severely restrict the number and type of messages posted. *See* 141 Cong. Rec. H8471 (Aug. 4, 1995) (statement of Rep. Goodlatte) ("There is no way that any of those [interactive computer service providers] can take the responsibility to edit out all information that is going to be coming in to them from all manner of sources onto their bulletin board. . . . [T]o have that imposition imposed on them is wrong. [Section 230] will cure that problem . . . ."). Congress therefore determined to cast broad tort protection to interactive computer service providers and users for harmful content originating from third parties and enacted Section 230 for that purpose.

---

[1] In fact, the legislative history of the CDA shows that Section 230 was, in part, created to remove the disincentive to self-regulation created by a 1995 New York state court decision, *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 N.Y. Misc. LEXIS 229, 23 Media L. Rep. (BNA) 1794 (N.Y Sup. Ct. 1995), which held that an interactive computer service provider was liable as a "publisher" of third-party content posted on its electronic bulletin board because the service provider advertised its practice of controlling content and screened and edited messages posted on its bulletin boards. *Id.* Thus, under *Stratton*, computer service providers who regulated the dissemination of offensive material on their services risked subjecting themselves to greater liability than computer service providers who did not. Congress eliminated the disincentive created by *Stratton* with protection provided by Section 230. H. R. Conf. Rep. No. 548, 104th Cong., 2d Sess. 194 (1996); *see also* 141 Cong. Rec. H8469-70 (Aug. 4, 1995) (statement of Rep. Cox).

## C. Judicial Interpretation of the CDA

Whether agreeing or disagreeing with the policy decisions behind Congress' enactment of the CDA, courts have consistently held that it bars tort liability against interactive computer service providers for content originating from third parties.

The leading case is *Zeran,* 129 F.3d 327. In *Zeran*, an unidentified person posted a message on an America Online ("AOL") internet bulletin board advertising the sale of T-shirts featuring "offensive and tasteless" slogans related to the 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City. *Id.* at 329. Persons interested in purchasing a T-shirt were instructed to call the plaintiff, Kenneth Zeran, at his home telephone number. *Id.* Mr. Zeran received an avalanche of angry and derogatory messages, including death threats. *Id.* Mr. Zeran contacted AOL, which agreed to remove the message from the bulletin board, but would not print a retraction. *Id.* Mr. Zeran sued AOL, alleging it had unreasonably delayed in removing defamatory messages, refused to post retractions of the messages, and failed to screen for similar postings thereafter. *Id*. at 330.

Both the trial court and the Fourth Circuit Court of Appeals held that Section 230 barred each of Mr. Zeran's claims pursuant to the Section 230 protection. The Fourth Circuit quoted 47 U.S.C. § 230 (c)(1), and held:

> By its plain language, Section 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, Section 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content— are barred.

[*Id.* at 330.]

Federal courts throughout the country have reached the same conclusion as *Zeran* ("Section 230 . . . plainly immunizes computer service providers like AOL from liability for information that originates with third parties"), confirming that Section 230's protection is both

7

strong and broad. *See Doe v. City of New York*, 2008 US Dist. LEXIS 33488 at * 12 (S.D.N.Y. 2008) (citing *Blumenthal v. Drudge*, 992 F. Supp. 44, 49-53 (D.D.C. 1998)); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Section 230 immunizes internet service providers from defamation and other, non-intellectual property, state law claims arising from third-party content."); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (upholding Section 230 immunity); *Universal Commc'n Sys. Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("[W]e too find that Section 230 immunity should be broadly construed."); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (observing the "consensus developing across other courts of appeal that Section 230(c) provides broad immunity for publishing content provided primarily by third parties"); *Green v. Am. Online, Inc.*, 318 F.3d 465, 471 (3d Cir. 2003) (same); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000) (affirming dismissal of claims for negligence and defamation on the ground that Section 230 "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third-party").

Indeed, no court rendering a decision regarding the scope of Section 230 has negated *Zeran*'s central holding that the statute precludes "any cause of action that would make service providers liable for information originating with a third-party user of the service." 129 F.3d at 330. Moreover, Congress has expressly confirmed that "[t]he courts have correctly interpreted section 230(c)." H.R. Rep. No. 107-449, at 13 (2002) (addressing the enactment of new legislation to extend the reach of Section 230 to a new category of service providers).

## POINT III

### THE COMMUNICATIONS DECENCY ACT, SECTION 230, BARS THE CLAIMS IN THE COMPLAINT AGAINST CRAIGSLIST

The Complaint fails to state a valid claim against craigslist on which relief can be granted because the claims in it fall squarely within the broad scope of Section 230's protection. Under Section 230 and the case law interpreting it, three elements are necessary for its protection to apply: (1) the defendant is a "provider or user of an interactive computer service"; (2) the content was "provided by another information content provider"; and (3) the claim seeks to treat the defendant as the "publisher or speaker" of the allegedly harmful content. 47 U.S.C. § 230 (c)(1); *see generally Ben Ezra, Weinstein & Co*, 206 F.3d at 984-85; *Zeran*, 129 F.3d at 330. In this case, each of these elements is satisfied such that Section 230's protection applies.

### A. Craigslist is a "Provider or User of Interactive Computer Services."

craigslist is a provider (and user) of interactive computer services under Section 230. The CDA defines "interactive computer services" broadly as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230 (f)(2).

As alleged in the Complaint, craigslist operates an internet website that allows users to post and browse advertisements to buy and sell goods and services. (First Am. Compl. ¶¶ 1, 6, 7, 10, 19, 20). On these allegations, craigslist fits squarely within Section 230's definition of a provider (and user) of an interactive computer service. craigslist provides (and uses) an interactive website ("service" and "system") that enables the public ("multiple users") to access information stored on the craigslist website via the internet ("computer access").

Numerous cases have held that website operators are "interactive computer service providers" under Section 230. *See, e.g., Carafano*, 339 F.3d at 1123-24 (holding that Matchmaker.com is an interactive computer service provider); *Barnes v. Yahoo!, Inc.*, Case No. Civ. 05-926-AA, 2005 WL 3005602, at *1 (D. Or. Nov. 8, 2005) ("Yahoo! is an interactive computer service provider . . . . Any person with access to the Internet may, at no charge, register as a Yahoo! user, obtain an online Yahoo! identifier and account, and then engage in various online activities . . . ."). Indeed, craigslist has already been held to be an "interactive computer service provider" under the CDA. *Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 698 (N.D. Ill. 2006) (holding that craigslist is an interactive computer service provider), *aff'd*, 519 F.3d 666 (7th Cir. 2008). In short, the first element for Section 230 protection is met.

### B. The Alleged Advertisement Was "Provided By Another Information Content Provider."

The alleged handgun advertisement identified in the Complaint was provided by another information content provider, not craigslist. Under the CDA, an "information content provider" is a person or entity responsible, in whole or in part, for creating or developing information provided through the internet or another interactive computer service. 47 U.S.C. § 230 (f)(3).

The Complaint plainly states that the alleged handgun advertisement on the craigslist website was placed by an "unknown individual." (First Am. Compl. ¶¶ 14, 15, 19). This is not craigslist, and it is not alleged that craigslist created, developed or placed the handgun advertisement. *See* First Am. Compl., *passim*. There is therefore no dispute that a third party allegedly placed the advertisement on craigslist's website. Thus, the second element for Section 230 protection also has been met.

## C. The Complaint Seeks to Treat Craigslist as the "Publisher or Speaker" of the Alleged Advertisement

As alleged in the Complaint, craigslist's only involvement with the advertisement was its purported "failure to monitor, regulate, properly maintain and police" the advertisements on its website. (First Am. Compl. ¶ 1; *see also* First Am. Compl.. ¶¶ 7, 10, 20). These activities – monitoring, regulating, maintaining and policing content, including the decision not to do so – are traditional editorial functions of a publisher for which an interactive computer service provider cannot be liable. *Zeran,* 129 F.3d at 330 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred"); *see also Blumenthal*, 992 F. Supp. at 51-52 (same).[2] Thus, the Complaint on its face improperly seeks to treat craigslist as the publisher or speaker of the alleged advertisement. *see generally Schneider v. Amazon.com, Inc.*, 108 Wn. App. 454, 31 P.3d 37 (Wash. App. 2001) (allegations that Amazon.com exercised editorial discretion and decision-making authority over postings on its website covered by the CDA).

The Complaint endeavors to artfully plead around this fact by alleging that craigslist is "not a mere publisher of third parties' content; rather it is a merchant, a middleman between buyers and sellers of goods and services." (First Am. Compl. ¶ 6).[3] The Complaint also alleges that craigslist "is either unable or unwilling to allocate the necessary resources to monitor, police, maintain and properly supervise the goods and services sold on its internet web site," and has therefore "become a public nuisance." (First Am. Compl. ¶ 20). But artful pleading cannot

---

[2] Declining Section 230 protection on the basis of editorial discretion also would directly contravene Congress' intent to overrule *Stratton* and any similar cases that treated interactive computer service providers as publishers if they acted to restrict objectionable material. H. R. Conf. Rep. No. 548, 104th Cong., 2d Sess. 194 (1996).

evade Section 230. *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849 (W.D. Tex. 2007) ("No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward [defendant] in its publishing, editorial, and/or screening capacities."), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

The Complaint's characterization of craigslist as a "merchant" and "middleman" does not change the application or outcome of Section 230. The Complaint still treats craigslist as the publisher of third-party content and is barred by Section 230 regardless of the alleged commercial nature of craigslist's services. *See Corbis Corp. v. Amazon.com,* 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004) (holding Section 230 barred state law claims against Amazon.com for third parties' advertisement and sale of allegedly unlawful items on Amazon.com's third-party selling service); *Stoner v. eBay Inc.*, No. 305666, 2000 WL 1705637, at *1 (Cal. Super, Ct. Nov. 1, 2000) (Section 230 protected eBay from liability stemming from the sale of material by third-party users of its web-based services).

Further, whether alleged as negligence, nuisance or another tort, holding craigslist liable for third-party content would inevitably treat craigslist as a publisher because it would (1) put craigslist in the posture of the original poster, who is the "publisher," *Zeran*, 129 F.3d at 333; or (2) subject craigslist to a legal regime in which it would have to review, edit, and/or screen third-party content — quintessential publishing functions, *id.* at 330. *See Gucci Am., Inc. v. Hall & Assoc.*, 135 F. Supp. 2d 409, 415 (S.D.N.Y. 2001) (Berman, J.) (clarifying that the Section 230 protection as discussed in *Zeran* "refers to defamation and other forms of tort liability").

In *Doe v. MySpace*, which contains facts materially indistinguishable from those in this case, a district court recently found that Section 230 applied and the *MySpace* website was

---

[3] In actuality, nearly all services on the craigslist website are provided to the public free of charge. *See* http://www.craigslist.org.

entitled to protection under the CDA. 474 F. Supp. 2d at 848. In that case, the mother of a minor user of an interactive Internet website brought an action against the website owner. 474 F. Supp. 2d 843. The complaint alleged that a third party had initiated contact with the minor user through postings on the defendant's website, which in turn allowed the third party to meet with the user and sexually assault her. The complaint sought recovery for various torts, including for negligence, gross negligence, fraud, and fraudulent misrepresentation. The court granted the defendant's motion to dismiss based on Section 230. It explained:

> [T]he Court finds *Zeran* and its rationale to be applicable to the case at hand. Here, Plaintiffs seek to impose tort liability on [defendant], a company that functions as an intermediary by providing a forum for the exchange of information between third party users.
> . . . .
> . . . Plaintiffs argue this suit is based on [defendant's] negligent failure to take reasonable safety measures to keep young children off of its site and not based on [defendant's] editorial acts. The Court, however, finds this artful pleading to be disingenuous. It is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on [defendant's website], [the third party] and [the minor] met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of [the minor]. If [defendant] had not published communications between [the minor] and [the third party], including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred. No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward [defendant] in its publishing, editorial, and/or screening capacities. Therefore, in accordance with the cases cited above, [defendant is] entitled to immunity under the [Communications Decency Act].

[*Id*. at 848, 849-50].

Here, similar to *Doe*, it is apparent that the basis of the Complaint is the exercise of craigslist's functions and discretion in its publishing, editorial, and/or screening capacities. Moreover, similar to *Doe*, pursuant to Section 230 of the CDA, craigslist cannot be liable for the

13

advertisement published on its website by a third party. Therefore, in accordance with the numerous cases cited above, including *Zeran* and *Doe*, craigslist is protected from liability for the claims set forth in the Complaint's under Section 230, and the Complaint should be dismissed for failure to state a claim on which relief can be granted.

## CONCLUSION

WHEREFORE, craigslist respectfully requests that this Court dismiss plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and provide such other relief as is just.

COUGHLIN DUFFY LLP

By: */s/ Justin N. Kinney*
    JUSTIN N. KINNEY (JNK 8531)

Wall Street Plaza
88 Pine Street
New York, NY 10005
(212) 483-9490

and

Elizabeth McDougall
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101
(206) 359-8000

*Attorneys for Defendant craigslist*

Dated: November 6, 2008