UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CALVIN GIBSON,

                Plaintiff,

-against-

CRAIGSLIST, INC.,

                Defendant.

Case No. 08 CV 7735 (RMB)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiff, Calvin Gibson, respectfully submits this Memorandum of Law in opposition to defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 47 USC 230.

Presently, plaintiff is confined to the Coler-Goldwater Hospital on Roosevelt Island. He can neither walk nor go to the bathroom without assistance. He may never be able to accomplish either of these functions alone.

If the allegations in the complaint prove to be true, as this Court must assume they are on this motion, had Craigslist not acted as it did, there is a good chance plaintiff might not have incurred the injuries which now afflict him.

Defendant states: "Craigslist has great sympathy for the situation and the injuries of the plaintiff alleged by the Complaint". Defendant's deeds belie their words.

At the outset of this case, defendant's attorney seemed to want to settle the case. To the question: what does your client want?, plaintiff prepared a detailed accounting of his damages. This attorney unilaterally made changes, reductions and offered to take a fee which was one-half of the normal New York State contingency fee.

This attorney then made numerous phone calls to counsel over several weeks imploring defendant to make an offer, no matter how low.

In point of fact, defendant to date has not offered a dime. It cares not a whit about the misery it causes.

In a recent New York Times article, dated on or around November 13, 2008, defendant, in response to demands by several attorneys general, offered to "curb" advertising by prostitutes. Such concessions consisted of making such advertisers use credit cards when purchasing ads and charging an extra fee to individuals advertising prostitution services.

There have been recent articles about individuals on Craigslist selling stolen goods, fraudulent goods or no goods at all. More recently, an individual pleaded guilty in New York City to promoting child prostitution on the Craigslist website.

As recently as Sunday, November 16, 2008, on Page 20 of the New York Daily News, there was an article on a now-too-familiar topic with the headline: Conned by Craigslist, they find the City has heart".

Once again, on November 17, 2008, on Page 2 of the New York Daily News, there was an article titled: WEB OF ECSTASY. The topic sentence stated: Drug Dealing on Craigslist has become so rampant that the city's special narcotics prosecutor has asked the online trading post to curb the ads, the Daily News has learned".

Guns, drugs, sex and stolen merchandise are being sold on defendant's website. The articles appear almost daily and these articles only concern New York City. Defendant is a nationwide outfit.

In short, defendant is a robber-baron of the 21st Century. It's only concern is the bottom line, the public be darned.

For public policy concerns, it must be immediately regulated or shut down.

## STATEMENT OF FACTS

For the relevant facts, this Court is respectfully referred to the First Amended Complaint in this action.

## DISCUSSION

### POINT I

### MOTION TO DISMISS STANDARD

Defendant has correctly stated the standard on a motion to dismiss. It will not be reprinted at length here.

### POINT II

### THE RELEVANT STATUTE

Defendant has correctly stated the relevant parts of 47 USC 230 (the "Statute"). It will not be printed at length here.

### POINT III

### THE STATUTE MAY NOT BE UTILIZED ON A FRCP 12(b)(6) MOTION

Initially, 47 USC 230 does not provide a blanket immunity to interactive computer services. **Chicago Lawyers' for Civil rights v. Craigslist**, 519 F3d 666, 669 (7th Cir. 2008); **Fair Housing Coun., San Fernando v. Roomates.com**, 521 F3d 1157, 1164 (9th Cir. 2008) ("the Communications Decency Act was not meant to create a lawless no-man's-land on the Internet").

As such, this statute is not properly used for a motion to dismiss, but may be used on a motion for summary judgment. **Fair Housing Coun.**, infra; **Chicago Lawyers'**, supra; **Ben Ezra Weinstein & Co. v. AOL**, 206 F3d 980 )10th Cir. 2000); **Novak v. Overture Services, Inc.**, 309 FSupp2d 446, 452 (EDNY 2004)

4

("As an initial matter, the Court notes that invocation of Section 230(c) immunity constitutes an affirmative defense. As the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)96) motion [citations omitted]. Instead, such a defense is generally addressed as a Rule 12(c) or Rule 56 motion"); **Blumenthal v. Drudge**, 992 FSupp 44 (DDC 1998) (summary judgment); **Zeran v. AOL** 129 F3d 327 (4th Cir. 1997) (FRCP 12(c)); **Corbis Corp. v. Amazon.com Inc.**, 352 FSupp2d 1098 (W.D. Wash. 2004) (summary judgment); **Doe v. Myspace, Inc.**, 474 FSupp2d 843 (W.D. Texas 2007), affirmed 528 F3d 413 (5th Cir. 2008) (SDNY did not dismiss based upon CDA but transferred venue to W.D. Texas which dismissed on 12(c)).

In this case, a 12(b)(6) motion is particularly inapt, since the complaint does not allege objectionable content. Indeed, the complaint alleges that the content of the ad was not objectionable.

The complaint alleges that the ad was placed using key words which would indicate that contraband was being bought and sold on the Craigslist website. The complaint alleges that defendant had a duty to, at the very least, attempt to ferret out the sale of illegal goods and services using these key words.[1]

As such, the motion should be denied so that discovery may be had to determine what efforts, if any, defendant made to stop the selling of illegal goods and services on its website.

---

[1] Although defendant apparently employs only 25-30 individuals, it should not be that difficult to stop the sale of contraband and services such as prostitution using key words searches. Alternatively, defendant may have to hire more employees.

5

## POINT IV

## THE STATUTE DOES NOT FORECLOSE COMMON LAW CAUSES OF ACTION

The complaint pleads an action sounding in negligence, a common law cause of action. Although inconsistent state and/or local law claims are pre-empted by the statute, 47 USC 230(e)3, common law claims are not. The doctrine is well-settled.

"Statutes which invade the common law or the general maritime law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident". **Isbrandtsen Co. v. Johnson**, 343 US 779, 783 (1951). See also, **US v. Texas**, 507 US 529 (1993); **Astoria Federal Savings and Loan Association v. Solimino**, 501 US 104 (1990).

There is no "statutory purpose to the contrary ... evident" in the statute. Nor, with one minor exception has defendant cited a case, in the 20 cases cited in its memo, in which the statute has been utilized to foreclose an action sounding in common law negligence.

# POINT V

## WITH ONE EXCEPTION, ALL OF DEFENDANT'S CASES ARE INAPPROPRIATE

With one exception, all of defendant's cases which address the statute revolve around content, utilizing 47 USC 230 (c)(1) - **Treatment of publisher or speaker**.

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

These cases and their citations may be found in defendant's Table of Authorities – Federal Cases – and will not be reprinted at length here.

This action does not seek to hold defendant liable as a speaker or in the role of a publisher. Ironically, the content of the ad placed upon defendant's website was not, in itself, objectionable.[2]

---

[22] Hopefully, had the ad read: "Illegal handguns for sale" or "Shoot your neighbor!", defendant would have shown admirable self-restraint and censored it. Such self-censorship would be protected by Section 47 USC 230 (c)(2)(A) of the statute.

## POINT VI

## DEFENDANT'S RELIANCE ON DOE V. MYSPACE, INC. IS MISPLACED

Even defendant points out that there is a fundamental difference between **Doe v. Myspace, Inc.**, 474 FSupp2d 843 (W.D. Texas 2007), and all the rest of the multitude of cases it cites in support of the flawed proposition that the statute, somehow, provides a blanket of immunity from any brought against any website based upon its website business.

**Doe**, infra, according to defendant, "contains facts [which are] materially indistinguishable from these in this case". This is not true and the reliance defendant places on this case (the only case in the plethora of cases cited by defendant which, due to the fact that it is based upon negligence, is vaguely similar) is sorely misplaced.

Initially, defendant in its Memorandum of Law omits an inconvenient fact: This Court was given the opportunity to dismiss **Doe** based upon the statute and failed to do so. This Court merely transferred venue. **Doe v. Myspace, Inc.**, 528 F3d 413, 417 (5th Cir. 2008) ("The district court in New York considered both motions and granted Myspace's motion to transfer venue, but declined to rule on the motion to dismiss, leaving it for the transferee Court").

Moreover, Myspace, Inc. ("Myspace") is a pure content provider. Nothing is bought and nothing is sold on the Myspace website. This is clearly not the case with the defendant, which is an internet merchant, a middleman between buyer and seller. Myspace is a "social networking website. **Doe**, infra, at 845.

"The idea of online social networking is that members will use their online profiles to become part of an online community of people with common interests. Once a member has created a profile, she can extend friend initiations to other members and communicate with her friends over the Myspace.com platform via e-mail, instant messaging or blog [emphasis added]", at 845-6.

Thus, the concept of Myspace is that individuals communicate with one another. The concept of Craigslist is that individuals sell things to one another.

"Myspace's Terms of Service provide that Myspace cannot verify the age or identity of Myspace.com members and cautions members not to provide 'telephone numbers, street addresses, last names, URLs or e-mail addresses' to other members", at 846.

The plaintiff in **Myspace** lied about her age when she joined Myspace.com.

The plaintiff in **Myspace** gave another member her phone number, she spoke with him by phone for several weeks and the two then met. The other member allegedly then sexually assaulted the plaintiff.

Without deconstructing the decision in **Myspace**, paragraph by paragraph, sentence by sentence, suffice it to say that the plaintiff in **Myspace** took content from the Myspace website, having lied to access it and did something with it she was not supposed to: contact the individual and make a date with him.

The plaintiff in this case had nothing whatsoever to do with the content on defendant's website. The content in question was only a means by which the perpetrator did what he was supposed to do: buy merchandise.

The facts are so dissimilar that the more one analyzes these two cases, the less they have in common, and ultimately the **Myspace** Court determined that the plaintiff's negligence claims must fail, in no small part, due to plaintiff's contributory negligence:

> However, the Court is unconvinced that any exception to the general no duty rule applies to MySpace here. Plaintiffs allege MySpace can be liable under a negligence standard when a minor is harmed after wrongfully stating her age, communicating with an adult, and publishing her personal information. To impose a duty under these circumstances for MySpace to confirm or determine the age of each applicant, with liability resulting from negligence in performing or not performing that duty, would of course stop MySpace's business in its tracks and close this avenue of communication, which Congress in its wisdom has decided to protect.

At 851.

The Fifth Circuit affirmance was based upon the statute and Texas common law, at 417. The decision also relies heavily upon that plaintiff's contributory negligence.

> Nothing in the record, however, supports such a claim; indeed, Julie admitted that she lied about her age to create the profile and exchanged personal information with Solis. In the February 1, 2007 hearing before the district court, the Does admitted that Julie created the content, disclosing personal information that ultimately led to the sexual assault, but stressed that their cause of action was rooted in the fact that MySpace should have

implemented safety technologies to prevent Julie and her attacker from meeting:

> THE COURT: I want to get this straight. You have a 13-year-old girl who lies, disobeys all of the instructions, later on disobeys the warning not to give personal information, obviously, [and] does not communicate with the parent. More important, the parent does not exercise the parental control over the minor. The minor gets sexually abused, and you want somebody else to pay for it? This is the lawsuit that you filed?

At 420-421.

* * * * * * * * * *

> THE COURT: But your client violated every single thing that MySpace says to do.

At 422.

As has already been stated, there is no similar issue of contributory negligence in this case, and screening the sale of illegal services and dangerous objects may be easily accomplished by simply hiring sufficient employees and conducting key word searches. Both of which defendant musty be forced to do if it wants to remain in business.

## **REQUEST FOR A PRE-MOTION CONFERENCE**

Point VI of plaintiff's Memorandum of Law provides a good point of departure for plaintiff's request for a pre-motion conference for a FRCP 11 motion. It is clear that **Doe** and this case are far from "materially indistinguishable", as there are no elements of contributory negligence in this action which played a large role in the decision in **Doe**.

Moreover, it is respectfully submitted that defendant sought to obfuscate the fact that this Court declined to dismiss on 12(b)6 grounds by citing at length from the District Court decision while failing to cite any part of the Circuit Court decision.

Nor has there been any Second Circuit Court decision or any District Court decision within the Second Circuit which extends the statute as sought by defendant in its motion.

This Court may not compel the defendant to negotiate in good faith with the plaintiff. This Court can, however, compel the defendant to pay sanctions in the form of costs and reasonable attorney's fees for the meritless motion it has just made.

## CONCLUSION

There is absolutely no merit to defendant's single-case motion. It comes close to being frivolous. Meanwhile, plaintiff's injuries and societal concerns about defendant are not frivolous. The motion must be denied.

Dated:    New York, New York
            November 18, 2008

Yours, Etc.,

**PAUL B. DALNOKY** (PD 6794)
Attorney for Plaintiffs
45 East 7 Street, #103
New York, NY 10003
(212) 260-4386

# CERTIFICATE OF SERVICE

**PAUL B. DALNOKY**, an attorney duly admitted to practice before the Courts of this State, affirms under the penalty of perjury:

1. On November 19, 2008, I served a true copy of the within **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**, by mailing it by first-class mail to:

**JUSTIN KINNEY, ESQ.**
Coughlin Duffy LLP
88 Pine Street
5th Floor
New York, NY 10005

**ELIZABETH McDOUGAL, ESQ.**
Perkins Cole LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099

Dated: New York, New York
November 19, 2008

_____
**PAUL B. DALNOKY**